UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

STARCHA SPORRER
N2360 Rivers Edge Drive
Marinette, WI 54143

            Plaintiff

v.                                          Case No.:1:222-cv-01110-WCG
                                          Hon. William G. Griesbach

JOSEPH DULAK
4108 Michigan Shores Drive
Menominee, MI 49858

KEEKO, LLC.
A Michigan limited liability Company
c/o Joseph Dulak, Registered Agent
3631 10th Street, Menominee MI 49858

            Defendants.

STATEWIDE REAL ESTATE OF MICHIGAN WISCONSIN, INC.
c/o Joseph Dulak, registered Agent
1361 10th street
Menominee, MI 49858

            Added Defendant.

## AMENDED COMPLAINT

**NOW COMES THE PLAINTIFF,** Starcha Sporrer, by her Attorneys, Johnson &Wilson Law, S.C., by Nathaniel A. Johnson, Esq., and as and for an Amended Complaint allege and show the Court as follows:

### PARTIES

1. The Plaintiff, Starcha Sporrer, is an adult Wisconsin resident, with a mailing address of

    N2360 Rivers Edge Drive, Marinette, WI 54143.

2. On information and belief, the Defendant, Joseph Dulak, is an adult resident of the state of Michigan, with a mailing address of 4108 Michigan Shores Dr., Menominee, MI 49858 (herein after "Dulak")

3. On information and Belief, Defendant Keeko, LLC, is a Michigan Limited Liability Company with a registered office address of 3631 10th Street, Menominee, Michigan, whose registered agent is Joseph Dulak. (herein after "Keeko")

VENUE AND JURISDICTION

4. Venue is proper in United States District Court Eastern District of Wisconsin, Green Bay Division pursuant to 28 U.S.C. 1391(b)(2) as the transactions considered herein and the real estate at issue herein is situated in Marinette County, Wisconsin.

5. This court has Subject Matter Jurisdiction over this suit pursuant to 28 U.S.C. 1332.

GENERAL ALLEGATIONS

6. The real estate at issue in this litigation is located at N2360 Rivers Edge Dr., Marinette Wisconsin, and is more particularly described as:

That part of the SE ¼ of the NE 1/4 of Section 26, Township 30 North, Range 23 East, in the Town of Peshtigo, Marinette County, Wisconsin, described as: Beginning on the West line of said forty (as fenced), as a point 1653.06 feet South from the Northwest corner of the NE 1/4 of NE 1/4 (said point being 1110 feet South from the Southeast line of County Trunk Highway "B"); thence continuing South on said West line (as fenced), 354.53 feet; thence North 89° 38' 50" East, 661.15 feet; thence North 00° 09' East, 222.65 feet; thence West 114.28 feet; thence north 27° 03' 06" West, 200 feet; thence Westerly along the arc of a curve to the right whose radius is 50 feet and whose chord bears North 58° 31' 33" West, 85.29 feet, to the end of said curve, thence South 95 feet;

thence West 383.66 feet, to point of beginning. Tax parcel #: 024-01443.004 (herein after the "Property")

7. Statewide Real Estate of Michigan Wisconsin, Inc., is a Michigan Corporation offering real estate brokerage and sales services in Wisconsin and Michigan, and is managed and owned, at least in part, by the Defendant herein, Joseph Dulak. (hereinafter "Statewide")

8. The Plaintiff, Starcha Sporrer, on or about August of 2018, began working as a licensed real estate salesperson exclusively for Statewide.

9. The Defendant, Joseph Dulak, is an adult resident of the State of Michigan, and was at all times material, the president, treasurer, secretary, director, and general manager of Statewide Read Estate of Michigan Wisconsin, Inc., including the entire terms of the working relationship between Statewide and the Plaintiff.

10. The Defendant, Joseph Dulak, at all times relevant, was also the Supervising Broker, within the meaning under Wis. Stats. Chapter 452, and the Real Estate Broker as defined by MCL339.2501(u) for the Statewide office locations in both Wisconsin and Michigan.

11. As part of Dulak's duties as the supervising broker of Statewide, Dulak supervised and had authority over the licensed salespersons working at or for Statewide, including the Plaintiff.

12. During the course of working at Statewide, beginning in August 2018 through the date of her termination, the Plaintiff earned commissions for her work at Statewide.

13. On January 29th, 2020 Dulak presented an independent contractor agreement to the Plaintiff for services she was providing in Michigan, and stated that he would not pay the Plaintiff her earned commissions unless she executed the agreement. ("Michigan IC Agreement")

14. Dulak also presented an independent contractor agreement to the Plaintiff for services she was providing in Wisconsin, and stated he would not pay the Plaintiff her earned commissions unless she executed the agreement. ("Wisconsin IC Agreement"). (the Agreements referenced in Paragraphs 13 and 14 are collectively referenced herein as the "IC Agreements")

15. In order to obtain her earned commissions from Dulak and Statewide, the Plaintiff, under duress, signed the IC Agreements.

16. As the Plaintiff knew Dulak had financed the purchase of a home for others in the past, during the time which the Plaintiff worked for Statewide, approximately at the end of April 2020, the Plaintiff identified a home which she desired to purchase, and approached Dulak to inquire if he would be willing to purchase the Property and sell it to her on a land contract.

17. As Dulak had done for another person in the past, Dulak agreed to purchase the Property and sell it to the Plaintiff on a land contract.

18. On information and belief, Dulak set up a limited liability company known as Keeko, LLC, which purchased the property on or about May 22, 2020.

19. In May of 2020, Dulak told the Plaintiff that he would draft the land contract and submit it to her for signature.

20. On information and belief, sometime in May of 2020, Dulak, without a law license, drafted a lease with an option to purchase and submitted it the Plaintiff on July 6th, 2020. (herein after the "Lease", which is attached hereto as Exhibit A)

21. The Lease contained an option to purchase the property for $152,000.00.

22. Shortly thereafter, the Plaintiff objected to the Lease and told Dulak that they agreed upon a land contract, however, Dulak refused to enter into a land contract for the property

and insisted that he would not pay the Plaintiff her earned commissions from Statewide until she signed the Lease.

23. In addition to wrongfully withholding earned commissions from the Plaintiff, Defendant Dulak created a hostile work environment which included exploiting the Plaintiff's financial dependency on Dulak, and frequent occurrences of sexual harassment.

24. Due to Dulak's exploitation and coercion, the Plaintiff, under duress, signed the Lease in July of 2020.

25. The Plaintiff, on numerous occasions, requested that she be provided a copy of the signed Lease, but has not yet received a copy of the lease signed by Keeko, LLC.

26. After signing the Lease, in reliance upon Dulak's representations, the Plaintiff began extensive remodeling projects to the Property, and moved into the Property in November 2020.

27. During the course of the Plaintiff's possession of the property, the Plaintiff expended over $20,000 in labor and over $46,000.00 in materials improving the Property.

28. The Plaintiff contacted a lender to finance the purchase of the Property, and was informed that she was pre-approved for a loan, but that the bank required a copy of the signed Lease and Option in order to finance the purchase.

29. Statewide withheld the lease payments from the Plaintiff's earned commissions.

30. On March 1st, 2021, the Plaintiff notified Dulak that she desired to exercise her option to purchase, and requested that he provide her a copy of the signed Lease, but Dulak refused.

31. The Plaintiff's lender refused to provide funding without a signed copy of the Lease and option, and then closed the application.

32. In furtherance of the exercise of the Option to Purchase, on March 9th, 2021, Dulak, on behalf of Statewide, withheld $2,000.00 from the Plaintiff's commission check and stated that he was applying it to the principle due on the option contract.

33. The Plaintiff's independent contractor relationship with Statewide was terminated by Dulak on October 10th, 2021.

34. On October 11, 2021, Dulak sent the Plaintiff a letter raising the rental payments due under the lease by 25%.

35. On October 23rd, 2021, Dulak sent a cure or vacate letter to the Plaintiff, but failed to address it to the Plaintiff's home address as stated in the Lease.

36. On February 4th, 2022, by and through her attorney, the Plaintiff sent Dulak a letter reiterating that she was ready to close the property and stated she would do so within 60 days.

37. On or about August 3, 2022, Dulak contacted the Plaintiff and stated that his family decided that the Property did not "function well in its portfolio as it is now performing" and they decided to put it on the market for around $249.900.00.

38. The Defendant Dulak, on behalf of Keeko, sent an eviction notice to the Plaintiff on August 11th, 2022.

FIRST CAUSE OF ACTION:
FRAUDULENT MISREPRESENTATION
As to Defendant Dulak

39. The Plaintiff realleges and states the facts contained in paragraphs 1 through 38 above as if stated fully herein.

40. This cause of action is based on the facts contained herein and the cause of action codified in Wis. Stat. §100.18.

41. In May of 2020, Defendant Dulak represented to Plaintiff that he would purchase the Property and sell it to the Plaintiff by a land contract. This representation was untrue, as Dulak had no intention to do so.

42. Plaintiff reasonably believed Dulak's misrepresentation and relied on his representation that he would sell her the property.

43. Plaintiff was damaged by her reliance on Dulak's misrepresentation as she was deprived the rights of title in the real estate and the costs of labor and materials she expended on the Property's improvement.

44. Dulak's representations were with total disregard for the rights of the Plaintiff, and were willful and malicious.

## SECOND CAUSE OF ACTION:
## FRAUDULENT MISREPRESENTATION
### As to Defendant Keeko, LLC and Dulak

45. The Plaintiff realleges and states the facts contained in paragraphs 1 through 44 above as if stated fully herein.

46. This cause of action is based on the facts contained herein and the cause of action codified in Wis. Stat. 100.18.

47. In May of 2020, Defendant Dulak, acting on behalf of Keeko, LLC, represented to Plaintiff that the LLC would sell the Property to the Plaintiff by an Option to Purchase included in the Lease. This representation was untrue, as neither Dulak nor Keeko, LLC had any intention to do so.

48. Plaintiff reasonably believed the Defendants' misrepresentations and relied upon the Defendant's representation that it would sell her the property.

49. Plaintiff was damaged by her reliance on Defendants' misrepresentation as she was deprived the rights of title in the real estate and the costs of labor and materials she expended on the Property's improvement.

50. The Defendants' representations were with total disregard for the rights of the Plaintiff and were willful and malicious.

THIRD CAUSE OF ACTION
DECLARATORY JUDGMENT
As to all Defendants

This is an action for a declaratory judgment pursuant to Wis. Stat. § 806.04.

51. The Plaintiff realleges and states the facts contained in paragraphs 1 through 50 above as if stated fully herein.

52. The purpose of this action is to request that the Court determine the rights of the parties, and as more fully set forth herein.

53. A judgment or decree in this action will remove an uncertainty giving rise to the proceeding.

54. The Plaintiff did notify the Defendant, Keeko, LLC of their desire to exercise their option to purchase under the Agreement.

55. The Plaintiff requested that the Defendant provide her a signed copy of the Lease and option, which was required by the bank in order to process her financing.

56. The Defendant refuses to honor the agreement of the parties and sell the property to the Plaintiff at the agreed upon price.

57. The Plaintiff requests that the Court determine that the Defendants have an obligation to sell the property to the Plaintiff on the terms contained in the Option.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### As to Defendant Keeko

58. The Plaintiff realleges and states the facts contained in paragraphs 1 through 57 above as if stated fully herein and pleads this cause of action in the alternative to enforcement of the Lease if the contract is deemed void or voidable.

59. The contract between the parties was induced by fraud, specifically that the Defendants lied about their willingness to sell the property to the Plaintiff and used coercive means to force the Plaintiff into entering into the contract under duress, and is thus voidable by the Plaintiff.

60. The Plaintiff conferred a benefit upon the Defendant Keeko by improving the Property by expending more than $66,000.00 on the improvement of the property, which has increased the value of the Property by over $100,000.00, and also made payments under the option to purchase.

61. The Defendant Keeko realized and appreciated the benefits conferred upon it by the Plaintiff.

62. It would be unjust for the Defendant Keeko to retain the benefit of referenced above without just compensation to the Plaintiff.

63. The Defendant suffered monitory losses in excess of $68,000.00, and other damages exceeding $32,000.00.

## FIFTH CAUSE OF ACTION
## TORTOUS INTERFERENCE WITH A CONTRACT
### As to Defendant Dulak and Keeko

64. The Plaintiff realleges and states the facts contained in paragraphs 1 through 63 above as if stated fully herein.

65. The Defendant, by refusing to provide a signed copy of the Lease and option, did tortuously interfere with the Lease.

66. As a result of the Defendant's refusal, the Plaintiff suffered harm as she was not able to obtain the necessary financing to purchase the property. The Plaintiff is further harmed in that she expended over $66,000.00 in improvements to the Property, and was unable to purchase the Property on favorable financing terms and has lost the appreciation on the Property.

## SIXTH CAUSE OF ACTION
## BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING
### As to Defendant Keeko

67. The Plaintiff realleges and states the facts contained in paragraphs 1 through 66 above as if stated fully herein.

68. Keeko, through its agent, Mr. Dulak, breached its duty of good faith and fair dealing by not providing a signed copy of the Lease upon the Plaintiff's request, and by wrongfully withholding earned commissions for payments on the option contract.

69. Keeko also breached its duty of good faith and fair dealing by refusing to honor the terms of the Option, then trying to sell the property to the Plaintiff for a price inflated by nearly $100,000.00.

## SEVENTH CAUSE OF ACTION
## DURESS
### As to Defendants Dulak and Keeko

70. The Plaintiff realleges and states the facts contained in paragraphs 1 through 69 above as if stated fully herein.

71. The Defendant, through the wrongful act of withholding earned commissions, coerced the Plaintiff into entering into the Lease, contrary to the prior agreement of the Parties.

72. The Defendant Dulak is liable to the Plaintiff for any and all damages the Plaintiff incurs as a result of the Lease, recission of the contract, compensatory damages, and punitive damages.

### EIGHTH CAUSE OF ACTION
### BREACH OF CONTRACT
### As to Defendants Dulak and Keeko

73. The Plaintiff realleges and states the facts contained in paragraphs 1 through 72 above as if stated fully herein.

74. The Defendant Keeko breached the Lease by refusing to sell the property to the Plaintiff for the agreed upon price, and by frustrating the contract with their unwillingness to provide a signed copy of the Lease.

75. The Plaintiff suffered harm in that the terms of financing available to her are now at a much higher cost, exceeding $300,000.00 over the course of the loan, as well as the cost of moving, and lost equity.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
### SEXUAL HARASSMENT
### As to Defendants Dulak and Statewide

76. The Plaintiff realleges and states the facts contained in Paragraphs 1 through 75 above as if stated fully herein.

77. During the Plaintiff's time working at Statewide, Statewide and Dulak controlled the terms, conditions, and privileges of Plaintiff's employment as outlined in the IC Agreements in that:

   a. Dulak and Statewide had complete and sole control over the Plaintiff's ability to advertise listings, including a requirement that all listings contain the Broker's name;

b. The Plaintiff was required to comply with all of Statewide's rules and regulations governing internet advertising;

c. All the intellectual property produced by the Plaintiff related to listings were the property of Statewide;

d. All the commissions, fees, and other terms and conditions of contracts entered into by Plaintiff related to clients were subject to the complete oversight and determination of Statewide;

e. Dulak and Statewide would pay the earned commissions at any time they wanted to and not in accordance with the IC Agreements.

78. During the course of the time the Plaintiff worked at Statewide, Defendant Dulak repeatedly made unwelcome physical and sexual comments toward the Plaintiff in the form of several written mobile text messages from him to her and in the form of inappropriate sexual or physical comments to her.

79. One such text message that Dulak sent the Plaintiff stated "you in church? Or just doing Missionary?"

80. Dulak also sent a text message to the Plaintiff that stated "Yup. You gotta jerk the pole and set the hook when you get the bite…. Sooo … Remember that with your husband too!!! [omitted emojis]"

81. Dulak sent other messages to the Plaintiff which had an unwelcomed sexual nature.

82. During the course of the time the Plaintiff worked at Statewide, Dulak also noticeably looked at her in a lewd and lascivious manner.

83. On April 18th, 2020, in the presence of a witness, and while the Plaintiff was working, Dulak gave an electronic device designed and used for sexual gratification to the

Plaintiff and stated "happy birthday, this is a gift for you but you have to give it to your husband."

84. All the sexual harassment, comments, and gifts by and from Dulak to the Plaintiff were unwelcomed.

85. As a direct and proximate result of the sexual harassment Dulak rendered upon the Plaintiff, she suffered severe embarrassment, humiliation, and mental and emotional distress and anguish.

86. Due to the fact that the sexual advances were unwelcomed, Dulak retaliated and terminated the Plaintiff's working relationship with Statewide, and wrongfully withheld her earned commissions.

## TENTH CAUSE OF ACTION
## TORTEOUS INTERFERENCE WITHIN A BUSINESS
### As to Defendants Dulak and Keeko

87. The Plaintiff realleges and states the facts contained in paragraphs 1 through 86 above as if stated fully herein.

88. The Defendant Keeko caused tortious interference within a business by going to Papa Murphy's, a business next to the Plaintiff's business to harass her and the Plaintiff's Contractor, Chris Paris.

89. Dulak made disparaging statements to the Plaintiff's contractor which harmed her business relationship with him.

## ELEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT – EARNED COMMISSIONS
### As to Defendants Dulak and Statewide

90. The Plaintiff realleges and states the facts contained in paragraphs 1 through 89 above as if stated fully herein.

91. The IC Agreement for Michigan requires that "The division and distribution of earned commissions and or fees shall take place as soon as practicable after receipt of such funds."

92. The IC Agreement for Wisconsin requires that earned commission are paid within 48 hours.

93. Contrary to the IC Agreements, Dulak and Statewide withheld a portion of the earned commissions from the Plaintiff, in an amount of no less than 5% of her total earned commissions.

94. Dulak and Statewide have not paid the whole amount of commissions due to the Plaintiff.

95. The Plaintiff suffered harm as a result of Statewide and Dulak's wrongful withholding of the Plaintiff's earned commissions.

96. The Plaintiff has suffered harm in the lost commissions in the amount of over $45,182.86.

WHEREFORE, PLAINTIFF REQUESTS that this Court grant judgment in favor of Plaintiff as follows:

a. That the Court award the Plaintiff compensatory damages in an amount exceeding $114,182.86, $301,626.88 in consequential damages (higher interest rate and PMI payments), $500,000.00 for damages and suffering due to the Defendant's violations of the Elliott-Larsen Civil Rights Act, and at least $500,000.00 in punitive damages, together with attorney's fees and costs.

b. That the Court award treble damages, together with costs and actual attorney's fees, for the Defendants' violation of Wis. Stat. 100.18.

c. That the Court award such other relief as the Court deems appropriate, including ordering the Defendant to comply with the Lease and sell the property for the agreed upon price in the option.

December 1, 2022

JOHNSON & WILSON LAW SC
Attorneys for the Plaintiff

Electronically signed by: Nathaniel A. Johnson, Esq.
Nathaniel A. Johnson
State Bar #1070869

1745 Stephenson Street
PO Box 376
Marinette WI 54143
Phone: 715-735-6671
Fax: 888-400-4559
Email: Nathaniel@johnsonwilsonlaw.com